Case 4:25-cv-01834   Document 29   Filed on 12/09/25 in TXSD   Page 1 of 10

United States District Court
Southern District of Texas
**ENTERED**
December 09, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VISA SOLUTIONS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-25-1834 |
| | § | |
| NAVAJO EXPRESS, INC., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

This is a contract dispute. Navajo Express, Inc. hired Visa Solutions, LLC to recruit 160 workers and process labor certifications for those recruits. Visa Solutions alleges that Navajo Express impermissibly cancelled the parties' agreements and refused to pay Visa Solutions the fees owed under those agreements. Visa Solutions sued, and Navajo Express moved to dismiss based on Texas's statute of limitations. (Docket Entry No. 21). Based on the pleadings; the motion to dismiss, the response, and the reply; the applicable law; and counsels' oral argument, this court grants in part, without prejudice, and denies in part Navajo Express's motion to dismiss. Visa Solutions alleged that Navajo Express breached a portion of its obligation to pay cancellation fees within the limitations period. Visa Solutions did not adequately allege that approval fees, weekly fees, or deductions from workers' paychecks accrued within the limitations period. Visa Solutions will have one more opportunity to adequately allege that approval fees, weekly fees, and deductions from workers' paychecks accrued within the limitations period. The reasons for these rulings are set out below.

**I.     Background**

Visa Solutions is an employee recruiting, processing, and relocation-service provider for foreign workers to immigrate legally into the United States for employment with U.S.-based employers. (Docket Entry No. 17 ¶ 4.01). It recruits and screens potential workers. (*Id.*). If the U.S.-based employer makes an offer of employment and the worker accepts, Visa Solutions then assists with submitting the worker's immigration applications. (*Id.*). Navajo Express is a nationwide commercial transportation and trucking company. (*Id.* ¶ 4.02).

Visa Solutions and Navajo Express entered into two Employee Recruitment Services Agreements. The Agreements are nearly identical but have different effective dates. The first Agreement became effective on signing (on October 12, 2017), and the second Agreement specified that Visa Solutions would not begin recruitment efforts for a second wave of foreign workers until the next year (after October 10, 2018). (Docket Entry Nos. 17-1, 17-2). Both Agreements require Visa to recruit 75 truck drivers and five diesel mechanics (160 total workers under both Agreements) and specified the rates that Navajo Express would pay as fees for each worker.

Visa Solutions alleges that by December 2017, two months after signing the Agreements, it started to recruit workers for Navajo Express. These recruitment efforts included arranging for advertisements, beginning administrative procedures for the workers' immigration, and contacting hundreds of recruiters. (Docket Entry No. 17 ¶ 4.08). Visa Solutions alleges that, based on this performance, Navajo Express accrued debts under the parties' Agreements.

Under the Agreements, Navajo Express could owe Visa Solutions four types of fees: (1) a retainer fee of $1,000 per worker payable within 5 days of the effective date of each Agreement; (2) an approval fee of $1,000 per worker when the U.S. Department of Labor approves a PERM

2

Labor Certification for each recruit; (3) a weekly fee of $120 per worker for each week the worker remained employed with Navajo Express, starting with the worker's first day of employment and continuing for 104 weeks of employment; and (4) a cancellation fee of $2,000 per worker if, after signing the Agreement, Navajo Express decided to cancel or reduce the number of workers. (*Id.* at 6).

Visa Solutions alleges that it "recruited approximately 173 workers in performing its duties under the [Agreements] to fulfill Navajo Express' order for 160 workers, of which 112 applications were approved by the U.S. Department of Labor for the PERM Labor Certification program." (*Id.* ¶ 4.10). By April 26, 2021, Visa Solutions had placed 24 drivers with Navajo Express, 8 of whom were still working for Navajo in April. (Docket Entry No. 17-9 at 1). Navajo Express created a table summarizing the relevant provisions in the Agreements and the fees it claimed under those provisions:

| **Fee** | **Retainer Fee** | **Approval Fee** | **Weekly Fee** | **Deductions from Workers' Paychecks** | **Cancellation Fee** |
|---|---|---|---|---|---|
| **Amount set by relevant contracts (per worker)** | $1,000, or $80,000 due on October 17, 2017, under the first Agreement, and another $80,000 due on October 10, 2018, under the second Agreement. | $1,000, due when US DOL approved each application. | $120 per week deducted workers' paychecks during first 104 weeks of employment. | $60.00 per week from deducted workers' paychecks during first 104 weeks of employment. | $2,000, due if Navajo reduced or cancelled the total number of recruits. |
| **Total economic damages claimed by Visa in the FAC** | N/A | $37,000 in unpaid approval fees (112 total applications approved by DOL and $82,000 previously paid). | $117,480 allegedly still owed by Navajo. | $64,470 allegedly still owed by Navajo. | $270,000 for cancellation of 135 workers. |

(Docket Entry No. 22 at 3).

Under separate agreements between Visa Solutions and the workers, each worker authorized Navajo Express to deduct $60 per week from their salaries and pay that amount to Visa Solutions, as compensation for the services Visa Solutions provided to the workers by helping them obtain their jobs and their work authorizations. (Docket Entry No. 17 ¶ 4.07).

In March 2021, Navajo Express cancelled part of the parties' Agreements. Visa Solutions's CEO, Jose Gomez-Urquiza, sent Navajo Express an email to confirm that it "suspended the process of all drivers that were at DOL or USCIS stage" "per [Navajo Express's] previous request." (Docket Entry No. 17-6 at 1). But for recruits who advanced to the "final stage of the EB3 process," Visa Solutions recounted that Navajo Express had discussed only an interest in "possibly cancelling the process for these people as well." (*Id.*). Visa Solutions attempted to dissuade Navajo Express from cancelling its order with respect to the 41 drivers at the final stage of the EB3 process, both because the drivers "waited a long time for this opportunity" and because Visa Solutions "invested a substantial amount of resources to fulfill [its] contractual obligation with Navajo." (*Id.*). To induce Navajo Express not to cancel, Visa Solutions offered "a risk-free incentive to move forward with these guys," which it styled as "a win-win proposal for everyone." (*Id.*).

Navajo Express responded to Visa Solution's March 2021 email, stating that it would confirm the balance outstanding on the parties' Agreements and take a position on the weekly invoices that Navajo Express owed. (*Id.* ¶ 4.13). Visa Solutions alleges that it "continued to wait for payment" after receiving this email but that no payment materialized. (*Id.*). Visa Solutions alleges that after a phone call between the parties—on a date after May 13, 2021—Navajo Express took the position that it would not pay any outstanding or new invoices issued by Visa Solutions.

4

(*Id.* ¶¶ 4.13, 4.16, 4.17). Visa Solutions then sent an invoice demanding cancellation fees for 135 workers. (*Id.* ¶ 4.17).

Visa Solutions sued Navajo Express on April 22, 2025. (Docket Entry No. 1). On August 1, 2025, after Navajo filed its initial motion to dismiss, (Docket Entry No. 5), Visa Solutions filed an amended complaint, (Docket Entry No. 17). Visa Solutions alleges four causes of action: (1) breach of contract; (2) breach of resulting or constructive trust; (3) fraudulent concealment; and (4) equitable estoppel. (*Id.* at 14–18). Navajo Express moved to dismiss the amended complaint, (Docket Entry No. 21), and Visa Solutions defended only its contract claim, (Docket Entry No. 23 at 4, 6–12).

## II.   The Legal Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conversely, when the allegations in a complaint, however true, could not raise a claim of

5

entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quotation marks omitted) (alterations adopted) (quoting *Twombly*, 550 U.S. at 558).

### III.     Analysis

Navajo Express moved to dismiss Visa Solutions's contract claims, arguing that the statute of limitations bars them.[1]  Limitations bars most of the alleged breaches in Visa Solutions's complaint: it bars most of the allegedly owed cancellation fees; all the allegedly owed approval fees; all the allegedly owed weekly fees; and all the allegedly owed deductions from workers' paychecks.

Texas law imposes a four-year statute of limitations on breach of contract claims.  TEX. CIV. PRAC. & REM. CODE ANN. § 16.004, 16.051; *Iyer v. Syndigo LLC*, No. H-25-2782, 2025 WL 2645911, at *3 (S.D. Tex. Sept. 15, 2025).  Visa filed its complaint on April 22, 2025, (Docket Entry No. 1), so its breach of contract claim must have accrued after April 22, 2021.

A cause of action accrues "when facts come into existence that authorize a claimant to seek a judicial remedy." *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 202 (Tex. 2011).  Contract claims accrue "when the contract is breached." *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex. 2006) (per curiam) (quoting *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002)).  Most of Navajo Express's alleged breaches occurred before April 22, 2021.

The fees that Navajo Express owed under the Agreements were all fixed amounts to be paid on a per-worker basis when the conditions of payment were met.  (Docket Entry No. 17-1;

---

[1] Visa Solutions did not withdraw its equitable estoppel claim.  (Docket Entry No. 23 at 6).  But "[u]nder Texas law, equitable estoppel is not an independent cause of action" but "an affirmative defense." *In re City Wide Cmty. Dev. Corp.*, 666 B.R. 320, 331 (N.D. Tex. 2025).  Visa Solutions's equitable-estoppel claim is dismissed.

Docket Entry No. 17-2). Because "a party breaches a contract when it fails to pay an invoice on or before the date payment is due," *IDA Eng'g, Inc. v. PBK Architects, Inc.*, No. 15-cv-1418, 2016 WL 5791674, at *2 (Tex. App.—Dallas Oct. 4, 2016, no pet.) (mem. op), the limitations period started to run on the due date of each fee that Navajo Express allegedly failed to pay, *see Spin Dr. Golf, Inc. v. Paymentech, L.P.*, 296 S.W.3d 354, 362 (Tex. App.—Dallas 2009, pet. denied) ("When recovery is sought on an obligation payable in installments, the statute of limitations runs against each installment from the time it becomes due."). If a contract "call[s] for . . . payment[] if and when" certain "conditions ar[i]se," then the due date is the date those conditions are met. *Lott v. Cougar Drilling Sols. USA, Inc.*, No. CV 22-1292, 2022 WL 3719976, at *5 (S.D. Tex. Aug. 29, 2022).

First, most of the cancellation fees accrued before April 22, 2021. In a March 2021 email, Visa Solutions's CEO stated that it "suspended the process of all drivers that were at DOL or USCIS stage" "per [Navajo Express's] previous request." (Docket Entry No. 17-6 at 1). The Agreements stated that "if . . . [Navajo Express] decides to cancel or reduce the number of Workers requested from Visa Solutions, then [Navajo Express] shall pay Visa Solutions a Cancellation Fee equal to $2,000.00 per Worker." (Docket Entry No. 17-2 at 5). Because the fees were payable upon cancellation, which occurred outside the limitations period, Visa Solutions's claims for fees based on these workers are time barred, notwithstanding any invoice that Visa Solutions later issued within the limitations period. *See Lott*, 2022 WL 3719976, at *5.

For the 41 workers who were in the "final stage of the EB3 process," (Docket Entry No. 17-6 at 1), Visa Solutions has plausibly alleged a breach within the limitations period. The March 2021 email is equivocal on whether Navajo Express cancelled the Agreement as to those 41 workers, and, at this stage, Visa Solutions is entitled to the reasonable inference that Navajo

7

Express did not do so. Visa Solutions's complaint alleges that it sent Navajo Express an invoice for 135 cancelled workers on May 22, 2021. (Docket Entry No. 17 ¶ 4.17). May 2021 is the earliest point at which the parties possibly recognized that Navajo Express wanted to cancel the entirety of the Agreements.

Second, limitations bars Visa Solutions's request for approval fees. Approval fees are "payable when the Permanent Labor Certification is approved on behalf of each Worker." (Docket Entry No. 17-2 at 5). Visa Solutions includes no allegations in its complaint that the Department of Labor approved workers after April 2021, within the limitations period. Visa Solutions's response to Navajo Express's motion to dismiss includes no argument that this court should draw a reasonable inference that this approval occurred within the limitations period. Visa Solutions argues that Navajo Express admitted in April 2021 that Visa Solutions had placed 24 drivers with Navajo Express. (Docket Entry No. 23 at 8). But an admission that Visa Solutions placed drivers with Navajo Express—on or before April 2021, close to the limitations date—does not support a reasonable inference that Department of Labor approval occurred within the limitations period. There is no allegation in the complaint that workers were placed with Navajo Express immediately after those workers obtained Department of Labor approval. Limitations bars Visa Solutions's claim that Navajo Express breached the parties' Agreements by failing to pay approval fees.

Third, limitations bars Visa Solutions's request for weekly fees. Weekly fees are "payable during each week each Worker recruited by Visa Solutions remains employed with" Navajo Express. (Docket Entry No. 17-2 at 5). There is only one allegation in Visa Solutions's complaint and its attachments that suggests Navajo Express employed recruited workers within the limitations period. *See In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 540 F. Supp. 2d 800, 808–09 (S.D. Tex. 2007) ("[D]ocuments attached to a complaint are viewed as part of the plaintiff's

pleadings."). Visa Solutions attaches to its complaint an email from Navajo Express dated April 26, 2021, stating that Navajo Express "lost 16 of 24 drivers placed to date." (Docket Entry No. 17-9 at 1). The reasonable inference is that by late April 2021, within limitations, Navajo Express employed eight workers who Visa Solutions recruited. But this inference is insufficient to state a claim within the limitations period because Visa Solutions is entitled to weekly fees only for the workers' first "104 weeks of employment." (Docket Entry No. 17-2 at 5). There is no allegation in the complaint that permits a reasonable inference that the eight workers' first 104 weeks overlapped with the limitations period. Visa Solutions has not alleged sufficient facts to infer that those workers' weekly fees accrued within the limitations period.

Fourth, for the same reasons, limitations bars Visa Solutions's request for deductions from the workers' paychecks. Visa Solutions's claim that Navajo Express must remit the deductions to which Visa Solutions and the workers agreed is similarly limited to the eight workers who continued to work for Navajo Express during the limitations period. This claim is similarly inadequate as alleged because the workers also owe deductions to Visa Solutions only "for 104 weeks of employment." (Docket Entry No. 17 ¶ 4.07). There is no allegation in the complaint that permits a reasonable inference that the eight workers' first 104 weeks overlapped with the limitations period. Visa Solutions has not plausibly alleged that it is entitled to weekly deductions of the workers' pay during the limitations period.

For these reasons, Visa Solutions stated a claim that Navajo Express owes cancellation fees but did not state a claim that Navajo Express owes approval fees, weekly fees, or workers' pay deductions.

9

## IV.    Conclusion

Navajo Express's motion to dismiss, (Docket Entry No. 21), is granted in part, without prejudice, and denied in part.  Visa Solutions's claims that Navajo Express breached the parties' Agreements by failing to pay cancellation fees survive the motion to dismiss, on the limited bases explained in this opinion.  Visa Solutions's claims that Navajo Express breached the parties' Agreements by failing to pay approval fees, weekly fees, and workers' deductions are dismissed, without prejudice.  Visa Solutions may amend its complaint to allege that such fees accrued within the limitations period.  Visa Solution's next complaint will be its last, and any further dismissals will be with prejudice.  Visa Solutions must amend its complaint by January 9, 2026.

SIGNED on December 9, 2025, at Houston, Texas.

*Lee H. Rosenthal*
Lee H. Rosenthal
Senior United States District Judge